# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 10 C 8199 | **DATE** | 4/27/2011 |
| **CASE TITLE** | Culligan International Co. Vs. Water Systems, et al. | | |

**DOCKET ENTRY TEXT**

Defendants' motion to dismiss for lack of personal jurisdiction (9) is granted and the motion to dismiss for improper venue is denied as moot. The case is, therefore, dismissed. Motion by Jason Smith to appear pro hac vice is granted. Status hearing set for 4/29/11 is now vacated.

■[ For further details see text below.]   Notices mailed by Judicial staff.

## STATEMENT

Plaintiff Culligan International Company ("Culligan") sued Water Systems of Birmingham, Inc., Water Systems of Montgomery, Inc., d/b/a Water Systems of Alabama, and Ray W. Carlisle for trademark infringement, false advertisement and violations of Illinois law. Currently before the court are defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and motion to dismiss for improper venue. For all the following reasons, the motion to dismiss for lack of personal jurisdiction is granted and the motion to dismiss for improper venue is denied as moot.

Defendants, who are located in Alabama, engage in the sale, installation and maintenance of water systems in Alabama. For 16 years prior to 2010, the two corporate defendants operated as Culligan dealers pursuant to a franchise agreement with Culligan. Pursuant to the franchise agreement, Water Systems of Alabama had a two-county territory in Alabama. Culligan alleges, among other things, that after it terminated the franchise agreement, defendants improperly continued to utilize Culligan trademarks in order to create the impression that defendants' products were still affiliated with Culligan.

A federal court exercising diversity jurisdiction has personal jurisdiction over a defendant if the state in which it sits would have such jurisdiction. *See, e.g.*, *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1275 (7th Cir. 1997). Although the Illinois Supreme Court has declined to hold that the reach of the state and federal constitutions is identical, it has stated that "in almost all cases, when federal due process concerns regarding personal jurisdiction are satisfied, so are Illinois due process concerns regarding personal jurisdiction." *Keller v. Henderson*, 834 N.E.2d 930, 941 (Ill. 2005). The exercise of personal jurisdiction satisfies federal due process requirements when the defendant has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Internat'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457 (1940)).

| STATEMENT |
|---|

"General jurisdiction is appropriate where the defendant's contacts with the forum state are 'continuous and systematic.'" *Citadel Group Ltd. v. Wash. Reg'l Med. Ctr.*, 536 F.3d 757, 760 n.3 (7th Cir. 2008) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984)). "The continuous and systematic contacts standard under general jurisdiction is 'considerably more stringent' than the minimum contacts standard under specific jurisdiction." *Winston v. Martinair, Inc.*, No. 06 C 5130, 2007 WL 684113, at * 3 (N.D. Ill. Feb. 26, 2007) (quoting *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 787 (7th Cir. 2003)). "'[T]hese contacts must be so extensive to be tantamount to [the defendant] being constructively present in the state to such a degree that it would be fundamentally fair to require it to answer in [the forum court] in *any* litigation arising out of *any* transaction or occurrence taking place *anywhere* in the world.'" *Id.* (quoting *Purdue*, 338 F.3d at 787). Here, defendants do not have the type of "continuous and systematic" contacts with the state of Illinois to permit me to exercise general jurisdiction. Defendants have no offices, no employees, no business accounts and no designated agent for service of process in Illinois. Accordingly, I turn to plaintiff's alternative argument that specific jurisdiction is proper.

Specific jurisdiction applies where the suit arises out of or is related to the defendant's contacts with the forum. In order to exercise specific jurisdiction over an out-of-state defendant, the defendant must have "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of the laws." *Citadel Group*, 563 F.3d at 761 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985)). The defendant's contacts with the forum state must not be "random, fortuitous, or attenuated"; rather, the defendant's contacts must be "such that [the defendant] should 'reasonably anticipate being haled into court there.'" *Id.* (quoting *Burger King*, 471 U.S. at 473).

As the Seventh Circuit and United States Supreme Court have held, "an out-of-state party's contract with an in-state party is alone not enough to establish the requisite minimum contacts." *RAR*, 107 F.3d at 1277 (citing *Burger King*, 471 U.S. at 478). This court's personal jurisdiction analysis is ultimately based on the totality of the circumstances, with the court considering such factors as the prior negotiations between the parties and the contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing. *See Citadel Group Ltd. v. Merle West Medical Center, Inc.*, No. 06 C 6162, 2007 WL 5160444, at *3 (N.D. Ill. June 13, 2007) (citing *Burger King*, 471 U.S. at 479). Having considered these factors, I conclude that I do not have personal jurisdiction over defendants. Defendants have no offices, employees or agents in Illinois. All of their business occurs in Alabama. Culligan initiated contact with defendants in Alabama and solicited defendants in Alabama to become Culligan dealers. A Culligan representative made numerous trips to Alabama to negotiate the franchise agreement. The franchise agreement was discussed and negotiated entirely in Alabama and was executed in Alabama during a visit by the Culligan representative. The purpose of the franchise agreement was to allow defendants to act as a Culligan dealer in Alabama. There is no evidence that defendants have ever made any business trips to Illinois. There is also no evidence that the franchise agreement contained a choice of law provision indicating that Illinois law would govern any dispute.

In reaching this conclusion, I have not overlooked the facts to which Culligan refers in attempting to strengthen its argument in support of jurisdiction. First, Culligan states that defendants sent payments and other correspondence to Culligan in Illinois. This alone is insufficient to support a finding of jurisdiction. *See Lakeside Bridge & Steel Co. v. Mountain State Construction Co., Inc.*, 597 F.2d 596, 597 (7th Cir. 1979). "Additionally, the purchase of goods . . . from the forum state alone is an insufficient foundation upon which to assert personal jurisdiction." *Federated Rural Electric Ins. Corp. v. Inland Power and Light Co.*, 18 F.3d 389, 395 (7th Cir. 1994) (citing *Lakeside*, 597 F.2d at 604).[1] Even taking these two factors together, I conclude that, absent other connections to Illinois (such as contract negotiations occurring in Illinois or an Illinois choice of law provision), they are simply too attenuated to provide a sufficient connection to Illinois for personal jurisdiction purposes.

| STATEMENT |
|---|

Nor do I conclude that the facts in *Burger King* support a finding of jurisdiction here. In *Burger King*, plaintiff Burger King brought suit alleging that defendant breached his franchise obligations by failing to make the required payments to Burger King's Miami, Florida headquarters. 471 U.S. at 464. The defendant, a Michigan citizen and resident, had never been physically present in Florida, but the co-owner of his franchise had attended required training at the Miami headquarters, and together they purchased $165,000 worth of required equipment from Burger King's Miami headquarters. Burger King's Miami headquarters set policy and worked directly with its franchisees in attempting to resolve major problems. *Id.* at 466. Defendant had negotiated the terms of the franchise with Burger King's Florida office, and had engaged in prolonged negotiations by mail and telephone with Burger King's Florida office. *Id.* at 475. The franchise agreement contained a choice of law provision providing for the application of Florida law. The Supreme Court found that the dispute grew directly out of "'a contract which had a *substantial* connection with [Florida].'" *Id.* at 479 (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)). Further, the Court relied on the defendant's deliberate efforts to reach out beyond Michigan to procure a long-term franchise and his acceptance of a 20-year term contract that envisioned continuing contacts in concluding that defendant's contacts with Florida could not be viewed as "fortuitous," "random," or "attenuated." As is the case in many personal jurisdiction cases, I must determine whether the kind and degree of defendants' contacts with Illinois are sufficient. In both kind and degree, defendants' contacts with Illinois fall well below the contacts the Court relied upon to exercise jurisdiction in *Burger King*. The defendant in *Burger King* approached Burger King and negotiated the 20-year contract with Burger King's representatives in Florida. Moreover, various franchise documents provided that all disputes would be governed by Florida law. When problems arose over building design, fees, rent and defaulted payments, the defendant had to negotiate with Burger King's Florida office. None of these factors are present here.

Nor do I conclude that the "express aiming test" (formerly referred to as the "effects test"), based on *Calder v. Jones*, 465 U.S. 783 (1984), is applicable here. *Calder* was a suit brought by actress Shirley Jones for libel after the National Enquirer ran a story about her. Defendants in *Calder* were Florida citizens who lacked sufficient contacts with California but were nonetheless subject to personal jurisdiction in California because they published an allegedly libelous story about a California resident where the sources were all in California and "the brunt of the harm" was suffered by the plaintiff in California. The Court characterized defendants' actions as "intentional, and allegedly tortious, actions [which] were expressly aimed at California" and were not "mere untargeted negligence." *Id.* at 789.

Plaintiff, relying on a line of cases in this circuit which seemed to expand the holding in *Calder*, argues that defendants are subject to jurisdiction in Illinois because plaintiff was injured here. The Seventh Circuit has recently retreated from those cases, and confirmed that its holding in *Wallace v. Herron*, 778 F.2d 391 (7th Cir. 1985) reflects the law concerning the "express aiming test" in this circuit. *See Mobile Anesthesiologists Chicago, LLC v. Anesthesia Associates of Houston Metroplex, P.A.*, 623 F.3d 440, 445 (7th Cir. 2010) ("We view *Wallace* as the correct statement of the standard set down by the Supreme Court [in *Calder*]."). In *Wallace*, the Seventh Circuit rejected the contention that *Calder* meant "any plaintiff may hale any defendant into court in the plaintiff's home state, where the defendant has no contacts, merely by asserting that the defendant has committed an intentional tort against the plaintiff." 778 F.2d at 394. In light of the Seventh Circuit's clarification (and retreat from its earlier statements in *Janmark, Inc. v. Reidy*, 132 F.3d 1200 (7th Cir. 1997) and *Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Ltd. P'ship*, 34 F.3d 410 (7th Cir. 1994)), I am not persuaded by the cases cited by plaintiff which were decided without the benefit of the clarification provided by the Seventh Circuit in *Mobile Anesthesiologists*.

I reject plaintiff's argument that the "express aiming test" applies here. Culligan argues that defendants' acts were directed at Illinois "given, among other things, the broad accessibility of Defendants' website,

| STATEMENT |
|---|

Facebook page and other online directories that associated Defendants with the Culligan marks." Culligan Resp. at 8. As support for this statement, Culligan submitted an affidavit from Thomas P. Vitacco, a Culligan Vice-President, who averred that defendants use the Culligan Marks in directory services on the Internet and in phone books. Vitacco also averred that the websites, www.yellowpages.com and www.yellowbook.com, identify defendants with Culligan. Culligan's argument fails for a number of reasons. First of all, Culligan makes no attempt to describe the nature or content of these websites, including whether they are passive, active or a hybrid. I have no way of analyzing the content of these websites. As a result, I find that Culligan has waived this argument. *See Smithkline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (7th Cir. 2006) (undeveloped and perfunctory arguments are waived). Further, Culligan makes no attempt to explain how these websites/directories, which are run/sponsored by parties whose business occurs exclusively in Alabama, specifically target customers in Illinois. Ultimately, Culligan has failed to show how defendants' alleged torts were *expressly aimed* at Illinois. *Mobile Anesthesiologists*, 623 F.3d at 447 (stating that *Calder*'s "express aiming test" requires "evidence beyond the plaintiff's mere residence in the forum state").

Defendants' motion to dismiss is granted. Defendants' motion to dismiss for improper venue is denied as moot.

---

1. Culligan attempts to argue that the fact that defendants received training from Culligan representatives is a factor which supports a finding of jurisdiction. Culligan fails to state where such training occurred, and therefore this fact does not support jurisdiction.